MELINDA HARDY
NOELLE L. FRANGIPANE
   Frangipanen@sec.gov
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-9612
Telephone: (202) 551-5142
Facsimile: (202) 772-9263

Attorneys for Defendant

| | |
|---|---|
| Gregory J. LaRoche,<br><br>　　　　　Plaintiff,<br>　vs.<br><br>U.S. Securities and Exchange Commission,<br><br>　　　　　Defendant. | C-05-4760-CW<br><br>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") and Local Civil Rule 7.1, the Securities and Exchange Commission ("SEC"), hereby files this memorandum in opposition to plaintiff Gregory LaRoche's motion for summary judgment and in support of its motion for summary judgment. For the reasons set forth below, summary judgment should be granted in favor of the SEC and against LaRoche on his claims relating to his two Freedom of Information Act ("FOIA") requests to the SEC.

## ISSUES PRESENTED

1. Whether the records requested in an electronic format were "agency records" when the SEC did not have the capability of producing the information in an electronic format from a proprietary third-party database.

2. Whether the SEC adequately searched for documents responsive to a second FOIA request.

## FACTS

Plaintiff seeks access to information from the SEC in an electronic format. The SEC cannot produce that information in the format requested. The SEC satisfies its FOIA obligation

by maintaining and providing the public with copies of the requested information in paper. To the extent that the SEC maintains certain information that plaintiff seeks in electronic format, it has offered to provide it to the plaintiff, but he has refused it. Because resolution of this case depends on the extent to which the SEC has access to information in a proprietary system not maintained by the SEC, a description of the scope of the SEC's access to that system follows.

**A. Form BD and the NASD's WebCRD Database**

The SEC, the National Association of Securities Dealers, Inc. ("NASD"), and states all independently use the Uniform Application for Broker-Dealer Registration ("Form BD") to perform their separate responsibilities for regulating broker-dealers. A broker-dealer may not begin business until it has properly filed Form BD to register with the SEC, become a member of a securities self-regulatory organization ("SRO"), and complied with all applicable state requirements. *See* Frangipane Decl. ¶ 2, Ex. A.

Broker-dealers file Form BD electronically through the internet-based Central Registration Depository ("WebCRD"), an electronic database owned and operated by the NASD. *See* Cummings Decl. ¶ 2. Regulatory organizations, including the NASD and the SEC, rely on WebCRD to review broker-dealer information and determine (*inter alia*) broker-dealers' compliance with their respective regulatory requirements. *See id.* ¶ 4. Significantly, while the SEC has access to WebCRD for purposes of reviewing information for each registered broker-dealer separately, it cannot use WebCRD to gather or manipulate any data on it. *See* Pearsall Decl. ¶ 6 & Ex. C. Because the SEC's access to the system is limited, the SEC lacks the ability to use WebCRD to create customized reports – that is, reports that include particular fields of information culled from Form BD – nor can it download any data or information from WebCRD. *See id.*[1] The SEC can only print hard copies of the information screens from WebCRD or save the screens to a word processing program. *See id.* ¶¶ 7 & 9. However, saving the screens to a word processing program still would not be a manipulable format of the type plaintiff is seeking.

---

[1] Through WebCRD, private entities may pay for and obtain what NASD refers to as "*ad hoc*" or customized reports of information such as what plaintiff is seeking. *See* Pearsall Decl. ¶ 8. In responding to plaintiff's FOIA request, the SEC noted that plaintiff could obtain the customized information he seeks from the NASD. *See* Winter Decl. ¶ 4.

1   Thus, when a member of the public requests access to broker-dealer filing information, the SEC
2   prints out WebCRD pages for the requester in hard copy.  *See id*. ¶ 7.
3          The NASD also provides the SEC with a separate data feed of Form BD information
4   which the SEC uses to post certain fields of broker-dealer information to its website as a
5   Frequently Requested FOIA Document.[2]  Winter Decl. ¶ 4 .  The SEC makes these fields that it
6   maintains electronically available to the public as well as to plaintiff.  *Id.*  The SEC does not,
7   however, have access to several fields that plaintiff has requested electronically (SROs where the
8   broker-dealers are registered, states in which broker-dealers are registered, types of businesses in
9   which broker-dealers are engaged, clearing firm of broker-dealers, or branch offices of broker-
10  dealers).
11         A 1993 Memorandum of Understanding ("MOU") between the SEC and the NASD
12  explains the relationship between the SEC and the NASD with respect to their use of the CRD
13  system for their separate oversight roles, and the daily data feed of information that the NASD
14  provides to the SEC.  *See* Pltf's Summ. Judg. Mem., Ex. E.  With respect to the CRD, the MOU
15  specifically provides that the SEC has "on-line access to data *for the purpose of reviewing* the
16  information submitted on the filings."  *Id.* at 1 (emphasis added).  Significantly, the MOU does
17  not provide that the SEC will make any payments whatsoever for the development and
18  maintenance of WebCRD, nor for the daily data feed.  *Id.*  The SEC is, in effect, a licensee of
19  WebCRD.  The NASD is not a private contractor that handles information for the SEC.  *See*
20  Cummings Decl. ¶3.  It is a co-regulator that has developed its own system, and it has not given
21  the SEC unfettered access to that system.
22  **B. Plaintiff's "First Request"**
23         On April 6, 2005, LaRoche made a FOIA request for 15 fields of information from the
24  Form BD in electronic format.  The requester noted that while much of this information was
25  already publicly available on the SEC's website, he was seeking additional fields and therefore
26  was making this request under the FOIA.  The 15 fields of information requested were:  (1)

---

[2] *See* www.sec.gov/foia/docs/bdfoia.htm.

names of the broker-dealers; (2) CRD numbers of the broker-dealers; (3) IRS employer identification numbers of the broker-dealers; (4) main addresses of broker-dealers; (5) main telephone numbers of broker-dealers; (6) organizations (SROs) in which broker-dealers are registered; (7) jurisdictions in which broker-dealers are registered; (8) legal status of broker-dealers (*i.e.*, partnership, sole proprietor, LLC, corporation); (9) month of fiscal year end of broker-dealers; (10) state and county of formation of broker-dealers; (11) date of formation of broker-dealers; (12) types of businesses in which broker-dealers are engaged; (13) names and titles of executive officers of broker-dealers; (14) clearing firm of broker-dealers; and (15) branch offices of the broker-dealers. This request, No. 05-05034, is referred to as plaintiff's "First Request." *See* Winter Decl. ¶ 2.

On June 10, 2005, the SEC's FOIA Office provided a final response to plaintiff's First Request, and indicated that after consulting with SEC staff, it had determined that only eight of the fields could be produced electronically. The FOIA Office offered to produce the eight fields.[3] The letter further indicated that plaintiff could obtain all the information sought in electronic format commercially through the NASD. *See* Winter Decl. ¶ 4.[4]

On July 29, 2005, plaintiff appealed the FOIA Officer's determination as to his First Request, alleging that all of the fields of information should be electronically provided to him. *See* Winter Decl. ¶ 5. On September 23, 2005, the SEC issued a final determination on plaintiff's appeal, affirming the decision of the FOIA Officer, and informing plaintiff that the requested information was available in its entirety in hard copy via the SEC's Public Reference Room. *See id.* ¶ 6.

**C. Plaintiff's "Second Request"**

Plaintiff made another FOIA request on September 29, 2005. This request sought: (1) all

---

[3] The SEC has recently determined that two additional fields are available electronically: state (but not county) of formation and names and titles of executive officers. Because the SEC still cannot provide the remaining fields, this does not appear to affect the issues before the Court.

[4] Plaintiff had received the same information in response to a prior FOIA request he made, FOIA Request No. 05-2798. In the June 10, 2005 final response, the FOIA Office enclosed a copy of the final response to plaintiff's earlier request.

documents which discuss or describe the SEC's ability to access electronic data from Form BD registrations and Form BD amendments filed electronically with the NASD; (2) all contracts or agreements made between the SEC and the NASD concerning the SEC's ability to access electronic data from SEC filings made directly to the NASD; and (3) all other documents or records which discuss or otherwise describe the SEC's ability to access data from SEC filings made directly to the NASD (including electronic data) including communications between the SEC and the NASD which discuss SEC access to this data. This request, No. 05-08712, is referred to as plaintiff's "Second Request." *See* Winter Decl. ¶ 7. On January 27, 2006, following a reasonable search for responsive documents, the FOIA Officer provided a final response to the Second Request, releasing all responsive materials in their entirety. *See id.* ¶ 11.

**ARGUMENT**

**I.     THE SEC DID NOT IMPROPERLY WITHHOLD "AGENCY RECORDS" IN RESPONSE TO PLAINTIFF'S FOIA REQUESTS**

The United States district courts are vested with exclusive jurisdiction over FOIA cases, 5 U.S.C. 552(a)(4)(B), and their jurisdiction is dependent upon a showing that an agency has: (1) "improperly" (2) "withheld" (3) "agency records." *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 150 (1980). Judicial authority to devise remedies and enjoin agencies can only be invoked if the agency has contravened all three components of this obligation. *Id*. at 150. "When an agency has demonstrated that it has not 'withheld' requested records in violation of the standards established by Congress, the federal courts have no authority to order the production of such records under the FOIA." *Id*. at 139.

Most FOIA actions are resolved by summary judgment. *See, e.g., Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) ("FOIA cases should be handled on motions for summary judgment"). The court may rely on affidavits to determine whether the agency has met its burden of proof regarding the merits of any claimed FOIA exemption, and may award the agency summary judgment if its affidavits are "relatively detailed," non-conclusory, and submitted in good faith. *Davis v. CIA*, 711 F.2d 858, 860 (8th Cir. 1983). "If the government fairly describes

5

Defendant's Opposition and Cross Motion
for Summary Judgment, C-05-4760-CW

the content of the material withheld, and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the government's position." *Cox v. DOJ*, 576 F.2d 1302, 1312 (8th Cir. 1978).

### A. The Information Fields in Electronic Format from the NASD Database Sought by Plaintiff's First Request Are Not "Agency Records"

FOIA applies only to "agency records." *Forsham v. Harris*, 445 U.S. 169, 182 (1980). If an agency does not have, or never had, possession and control of the requested record, then there can be no improper withholding." *DOJ v. Tax Analysts*, 492 U.S. 136, 145 (1989). To qualify as an "agency record" subject to FOIA, "the agency must 'either create or obtain' the requested materials," and "the agency must be in control of [them] at the time the FOIA request is made." *Id*. at 144.

Plaintiff is seeking records that do not satisfy either prong of that test: (1) the SEC has not created or obtained the information in electronic format that plaintiff seeks, and (2) it does not have control over those electronic records.

Undisputed evidence shows that the SEC has not created or obtained the electronic records plaintiff seeks. Other than fields in the electronic format the SEC has offered to provide, the SEC does not have the data plaintiff seeks in a manipulable or downloadable electronic format. *See* Pearsall Decl. ¶ 6. It simply does not have the capacity to do anything with the data on the NASD's WebCRD other than review it and print it. *See id.* ¶ 7. Plaintiff's evidence shows nothing to the contrary. *See* Pltf's Summ. Judg. Mem. at 10. The fact that Form BDs are filed electronically, and that the SEC can view data on WebCRD, does not establish that the SEC can convert that data to the format plaintiff seeks. Instead, the fact that WebCRD is the NASD's proprietary system that the NASD owns and operates is entirely consistent with the SEC's evidence that it cannot download and manipulate the data on WebCRD.

The fact that the NASD has data in the format plaintiff seeks and can produce customized reports for the public for a fee does not change this analysis because the NASD did not create or obtain the data in a manipulable or downloadable electronic format on behalf of or for the use of

1    the SEC.  Thus, this case is not like the cases plaintiff cites where private entities created records
2    for the agency at agency expense, and provided them to the agency without a limitation on their
3    use.  *See Hercules Inc. v. Marsh*, 839 F.2d 1027, 1029 (4th Cir. 1988) (phone directory prepared
4    by a contractor on behalf of Army was an agency record because "the entire cost of preparation is
5    borne by the government and, indeed, the directory states that it is the property of the
6    government"); *Burka v. HHS*, 87 F.3d 508 (D.C. Cir. 1996) (records created by a contractor
7    acting on behalf of HHS, and which HHS planned to take physical possession of at the
8    conclusion of the project were agency records).  Instead, this case is analogous to *Forsham* where
9    the Supreme Court said records generated by a federally funded grantee were not agency records,
10   despite the funding, because the agency never received the records.  445 U.S. at 181-82.  Here,
11   the NASD has not provided the Commission with the records plaintiff seeks in electronic format.
12          Plaintiff mischaracterizes Form BD as solely an SEC form.  The Form BD instructions
13   make clear that broker-dealers use this form to register not only with the SEC, but also with
14   SROs and states.  *See* Pltf's Summ. Judg. Mem., Ex. C.  Furthermore, certain portions of the
15   Form BD are clearly dedicated to information for the SROs and states, and are not for SEC use.
16   *Id.*  Questions and correspondence about the Form BD are also handled by the NASD.  *Id.*
17          Plaintiff also depends on statements in SEC regulations and Form BD instructions that
18   provide that Form BD will be made available to the public.  Those sources, however, never state
19   or imply that the SEC will produce the information in an electronic format.
20          Because plaintiff cannot satisfy the first *Tax Analysts* prong, it is not necessary to
21   consider the second.  Nonetheless, a review of whether the SEC has control of the data makes
22   clear that data in the form plaintiff seeks is not an agency record.  In *Tax Analysts,* the Court
23   identified four factors relevant to determining whether an agency exercises sufficient control over
24   a document to render it an agency record:  "(1) the intent of the document's creator to retain or
25   relinquish control over the records; (2) the ability of the agency to use and dispose of the record
26   as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and
27   (4) the degree to which the document was integrated into the agency's record system or files."
28

1  492 U.S. at 136.  Application of these factors shows that the SEC does not control the format of
2  the data at issue.  The NASD has maintained control over the electronic data and has given the
3  SEC only limited ability to access that data.  Indeed, the NASD has primarily given the SEC the
4  ability only to review the data.  Finally, the SEC does not download or manipulate the data, and
5  (except for the data offered) does not have its own database separate from the NASD's
6  WebCRD.  Thus, the SEC does not "control" the WebCRD database, and records in the specific
7  format plaintiff seeks are not "agency records" under the FOIA.

        **B.**        **The SEC Properly Acted on the Second Request Because it Conducted a Reasonable Search and Provided the Documents it Found**

10        In his motion for summary judgment, challenges the adequacy of the search undertaken
11 by the SEC with respect to his Second Request.  As a general rule under the FOIA, an agency
12 must undertake a search that is "reasonably calculated to uncover all relevant documents."
13 *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  To prove the adequacy of its search, an
14 agency relies upon its declarations, which should be "relatively detailed, nonconclusory, and
15 submitted in good faith."  *Pollack v. Bureau of Prisons*, 879 F.2d 406, 409 (8th Cir. 1989).
16 While the initial burden rests with an agency to demonstrate the adequacy of its search, once that
17 obligation is satisfied, the agency's position can be rebutted "only by showing that the agency's
18 search was not made in good faith."  *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993).
19 Hypothetical assertions are insufficient to raise a material question of fact with respect to the
20 adequacy of an agency's search.  *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 67 n.13 (D.C. Cir.
21 1990).  It is well established that "[a]gency affidavits enjoy a presumption of good faith that
22 withstands purely speculative claims about the existence and discoverability of other
23 documents."  *Chamberlain v. DOJ*, 957 F. Supp. 292, 294 (D.D.C. 1997).  Also, an agency's
24 inability to locate every single responsive record does not undermine an otherwise reasonable
25 search.  *Duenas Inturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).
26        In the case at bar, plaintiff has done nothing but make unfounded allegations concerning
27 the adequacy of the SEC's search and assumptions about what documents exist responsive to his

Second Request. As the attached Declaration of SEC FOIA Officer Celia Winter demonstrates, the search undertaken by the SEC was reasonably calculated to uncover all relevant documents, and FOIA Office staff followed standard procedures in the search for documents responsive to plaintiff's Second Request. *See* Winter Decl. ¶¶ 8-9. The FOIA Office queried all appropriate offices within the SEC for responsive documents: Office of the General Counsel, which, as the chief legal officer of the SEC, would have participated in any contracts or agreements with NASD; the Division of Market Regulation, which regulates the major securities market participants, including NASD; the Division of Investment Management, which regulates investment companies and federally registered investment advisers; the Division of Enforcement, which investigates possible violations of securities laws; the Office of Information Technology, which has overall responsibility for the SEC's information technology program; and the Office of Filings and Information Services, which supports the SEC's Full Disclosure, Supervision and Regulation of Securities Markets, is responsible for the SEC's Records Management program, administers the SEC's FOIA program, operates the branches of Public Reference and Filer Support, and provides assistance to the filing community with obtaining information. *See* Winter Decl. ¶ 9. There are no other offices at the SEC which might have responsive documents, and all responsive documents were released in full to the plaintiff. *See* Winter Decl. ¶¶ 10-11.

Regarding plaintiff's Second Request, plaintiff has failed to show a genuine issue of material fact to be tried. He does not identify any documents that should have been produced but were not, and he has no evidence whatsoever of bad faith. Because the plaintiff has failed to demonstrate that the search undertaken by the FOIA Office for documents responsive to his Second Request was not adequate, defendant is entitled to summary judgment on this claim.

## II. PLAINTIFF CANNOT BRING A SEPARATE CLAIM UNDER THE APA

Plaintiff cannot state a separate claim under the Administrative Procedure Act ("APA"). The FOIA amended the APA, *see DOJ v. Reporters Cmte. for Freedom of the Press*, 489 U.S. 749, 784 (1989); *Andrade v. U.S. Sentencing Comm'n*, 989 F.2d 308, 309 (9th Cir. 1992) ("FOIA is a part of the [APA]"), and provides the manner of judicial review specific to appeals of agency

1  FOIA decisions. Review under the general provisions of the APA is not available "to the extent
2  that prior, adequate and exclusive opportunity for judicial review is provided by law." 5 U.S.C.
3  703. Here "[t]he FOIA itself provides an adequate remedy for Plaintiff's claims and separate
4  APA review is not available." *Sierra Club v. DOI*, 384 F. Supp. 2d 1, 30 (D.D.C. 2004); *see*
5  *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of
6  review in the APA to duplicate existing procedures for review of agency action").

### III. PLAINTIFF'S DECLARATORY JUDGMENT ACT CLAIMS ARE BARRED

Plaintiff seeks relief under the Declaratory Judgment Act ("DJA") in asking the Court to declare that plaintiff is "entitled to receive electronic format records and data from the SEC ... for any similar future requests seeking similar electronic format data from the SEC stored within the NASD's CRD system." However, the SEC has sovereign immunity. *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1214 (9th Cir. 1998). As such, it can only be sued where a statute expressly and clearly waives that immunity and gives the courts subject matter jurisdiction. *Lane v. Pena*, 518 U.S. 187, 192 (1996). The DJA provides no independent grant of jurisdiction. *Skelly Oil v. Phillips Petroleum*, 339 U.S. 667, 671 (1950). While FOIA provides jurisdiction, it is only for existing FOIA requests. Thus, there should be no jurisdiction to challenge unmade – and possibly never made – FOIA requests. As the SEC has not improperly withheld records from plaintiff, this Court lacks jurisdiction to award him any other relief. *Kissinger*, 445 U.S. at 150.

### CONCLUSION

For the foregoing reasons, the Court should grant the SEC's cross motion for summary judgment, and dismiss the plaintiff's Complaint in its entirety.

Respectfully submitted,

April 14, 2006

_____
MELINDA HARDY
NOELLE L. FRANGIPANE
Frangipanen@sec.gov
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-9612
Telephone: (202) 551-5142